ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| REINALDO MONTALVO LÓPEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400150 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento Corrección y Rehabilitación<br><br>Caso Núm.:<br>ICG-36-2024<br><br>Sobre:<br>Cobro de Dinero por trabajo |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 10 de mayo de 2024.

Reinaldo Montalvo Vélez (Recurrente o señor Montalvo Vélez), por derecho propio y en *forma pauperis*, nos solicita que revisemos la Respuesta emitida el 12 de enero de 2024 del Área Concernida de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación. Mediante esta se le informó que ningún confinado que trabaja dentro de las áreas de vivienda, recibirá compensación monetaria de parte del Departamento de Corrección.

Por los fundamentos que exponemos a continuación, CONFIRMAMOS la determinación recurrida.

## I.

El 8 de enero de 2024, el señor Reinaldo Montalvo López presentó ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, la Solicitud de Remedio Administrativo Núm. ICG-36-24. Solicitó que se le

Número Identificador

SEN2024_____

informara por qué no se le estaba pagando por el trabajo que realizó en el módulo 8 C-1 de mantenimiento, limpieza, pintura del módulo, entre otros. Indicó que hacía más de siete (7) meses que trabajaba en el módulo 8 C-1. Mencionó que el Comité lo había asignado en esa plaza de trabajo, pero no ve el pago, ya que no bonifica por que la Sentencia que cumple es de años naturales. Adujo que firma la nómina, le piden el número de cuenta y los últimos números del seguro social. Reiteró que le gustaría saber la razón por la que no se le paga.

El 16 de enero de 2024 el área concernida de la División de Remedios Administrativos emitió la siguiente respuesta:

> Todos los confinados asignados por el Comité de Clasificación y Tratamiento, dentro de las áreas de vivienda (módulos), se le otorga, bonificación adicional por trabajo o estudios cursados, luego de la evaluación correspondiente por el área sociopenal (algunos confinados, no reciben bonificación adicional por trabajo y estudios cursados, por su tipo [de] sentencia por ley). Además, ningún confinado que trabaja dentro de las áreas de vivienda (módulos), recibirá compensación monetaria de parte del Departamento de Corrección y Rehabilitación.

En desacuerdo, Montalvo López solicitó reconsideración.[1] El 22 de febrero de 2024 la División de Remedios emitió una Respuesta en Reconsideración. Allí determinó denegar la petición de reconsideración por lo siguiente:

> Con relación a las razones de su solicitud de reconsideración, le informo Sr. Montalvo López, usted fue visto en Comité de Clasificación y Tratamiento, el día 22 de junio de 2023, donde lo relevan de sus labores en cocina y lo asignan a mantenimiento dentro del módulo 8C-I (limpieza). Por lo dialogado con el personal de cuentas y con su técnico socio penal, me informaron que usted no recibe bonificación adicional por trabajo o estudio debido a su sentencia (separación permanente de la sociedad), **con respecto a compensación monetaria no la tiene por el trabajo realizado, ya que son determinados los criterios de labores. Usted sí, firmara nomina, esto es para evidenciar**

---

[1] En el apéndice de los anejos informa que se incluyó como Anejo III la Solicitud de Reconsideración de fecha 22 de febrero de 2024, no obstante, el referido documento no está en el expediente original sometido a este foro.

> **su asistencia en sus labores de mantenimiento dentro del módulo y para así entregarle copia a su técnico socio penal como evidencia de sus funciones y si en algún momento tenga que asistir al Seguro Fondo del Estado por algún percance en sus labores**.
>
> Actualmente no bonifica, pero le favorece en aspectos de ajustes institucionales. (Énfasis nuestro).

En desacuerdo con esta determinación, el señor Montalvo López acudió a este foro intermedio con una *Solicitud de Revisión por Compensación Monetaria por trabajo realizado*.

El recurrente alegó que en mayo de 2023 se le asignó a trabajar en el módulo 8C-1 en mantenimiento. Que, al pasar el primer mes, el oficial a cargo de los trabajadores le llevó la hoja de trabajo para que la firmara, le pidió el número de cuenta y el de seguro social para depositarle en su cuenta. Que pasó el tiempo y no se reflejó en su cuenta el dinero por el trabajo realizado. Entonces hizo una carta para saber por qué no se le había pagado y le contestaron que se le iba a pagar por trabajar en el módulo 8C1 ni que iba a bonificar por que su sentencia era por años naturales. Ante ello, solicitó reconsideración con una copia de la Ley número 116 de 22 de julio de 1974 según enmendada.

Sostuvo que toda persona que trabaja tiene derecho a que se le pague y que el Gobierno de Puerto Rico asigna un dinero al Departamento de Corrección para los confinados que trabajan dentro o fuera de la institución. Mencionó que no se le puede dar trabajo a un confinado si no le van a pagar o bonificar. Adujo que ha trabajado todas las instituciones que ha estado y siempre le han pagado. Además, que ha trabajado 8 meses y 5 días en la Institución Guerrero de Aguadilla. Reitera que lo único que pide es que se le pague por labores realizadas. Expresó que existe un

imperativo constitucional que consagra el objetivo rehabilitador del sistema penal correccional.

Señaló que la decisión de no pagarle es una arbitraria, caprichosa e ilegal, la cual le priva de tener sus cosas y el sustento diario, por lo que procede que se corrija dicha decisión.

Evaluado el recurso y los apéndices, el 11 de abril de 2024 emitimos una Resolución en la que aceptamos su comparecencia como indigente según peticionada en la *Solicitud y Declaración para que se exima de pago de arancel por Razón de Indigencia*. A su vez, ordenamos al Recurrido que se expresara sobre el recurso y en particular que nos informe de su posición en torno a la aplicación o no del Manual de Normas de Oportunidad de Trabajo para Miembros de la Población Correccional con el número AC-PROG-009.

En cumplimiento, el 6 de mayo el Departamento de Corrección y Rehabilitación, representado por la Oficina del Procurador General, presentó un *Escrito en Cumplimiento de Orden.*  Incluyó como parte de los apéndices, un documento intitulado *Acuerdo del Comité de Clasificación y Tratamiento* de 19 de abril de 2024 y una *Certificación de Labores Voluntarias sin Compensación Monetaria* firmada por el señor Reynaldo Montalvo Ramos, el 19 de abril de 2024.  Con el beneficio de ambos escritos, disponemos.

## II.

## A.

La Administración de Corrección fue creada por la Ley Núm. 116 de 22 de julio de 1974, 4 LPRA sec. 1101 y ss., que le confirió al Administrador la facultad de aprobar, enmendar y derogar reglamentos internos que propicien un proceso de rehabilitación adecuado para asegurar una mejor calidad de vida al miembro de

la población correccional. Durante la vigencia de la Ley Núm. 116 de 1974, se aprobó amplia reglamentación para regir los procesos internos de la agencia.

El Plan de Reorganización Núm. 2 de 2011[2], derogó la Ley 116 de 1974, y creó el Departamento de Corrección y Rehabilitación.   Artículo 2, 3 LPRA, Ap. XVIII, Art. 2.   Como resultado del Plan, se promueve un Departamento enfocado en la custodia y la rehabilitación, proveyendo un tratamiento adecuado por personal capacitado, de tal forma que, conforme a los ajustes institucionales de la clientela, se pueda evidenciar su rehabilitación. *Id*.

De acuerdo con el Artículo 9 (e) del Plan de Reorganización, el Secretario velará que se le asegure a la clientela el fiel cumplimiento de ciertos derechos, entre ellos, participar en programas de rehabilitación, tratamiento, estudio o trabajo que sean compatibles con su proceso de reintegración a la sociedad y sujeto a la previa evaluación correspondiente, y en la medida en que lo permitan los recursos […]. 3 LPRA, Ap. XVIII, Art. 9.

A esos efectos, el Artículo 5 (f) del Plan promueve, ampliar los programas de educación y trabajo para que impacten a toda la población correccional que interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables. 3 LPRA Ap. XVIII, art. 5(f).

Con el fin de establecer unas guías uniformes en los programas de trabajo en los que participan los confinados, se adoptó el *Manual sobre Oportunidad de Empleo y Trabajo para*

---

[2] Creado al amparo de la Ley 182-2009, conocida como la "Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009"

*Miembros de la Población Correccional* de 22 de junio de 2000, enmendado el 19 de agosto de 2003, AC PROG-009 (en adelante, *Manual de Empleo*).

El Manual de Empleo establece como política de la Administración de Corrección, ahora, Departamento de Corrección, el proveer a los miembros de la población correccional experiencias de trabajo o empleo remunerado.[3] Para ello se pautaron ciertas normas generales, entre ellas, se establece que la participación del miembro de la población correccional en programas de trabajo será estrictamente voluntaria, pero la selección y naturaleza del trabajo quedará a discreción del Comité de Clasificación y Tratamiento. *Manual de Empleo, inciso* (III)(B).

Para el Plan de Trabajo, cada institución tendrá un plan de limpieza y mantenimiento de las facilidades donde conste la asignación diaria de tareas al personal o miembros de la población correccional que participen. En el plan constarán además quienes estarán a cargo de la supervisión de labores y de la certificación de que las labores se realizan conforme a las normas establecidas. *Manual de Empleo, inciso* (III)(D) (2).

En lo concerniente al jornal o salario de los reclusos, referido *Manual* indica lo siguiente:

> 1. Se pagará a los miembros de la población correccional según establezca el(la) Administrador(a) mediante **orden administrativa** a tales efectos, a excepción del salario o jornal que devenguen los miembros de la población correccional en programas de la CEAT [Corporación de Empresas de Adiestramiento y Trabajo] o en programas especiales en la comunidad.

> 2. En el caso de trabajos en la comunidad los sueldos o jornales se ajustarán a los intereses de todas las partes, destacando el interés del estado sobre todos los demás. Fomentando de este modo que los confinados puedan prestar servicios al estado a un costo menor aliviando así el presupuesto del

---

[3] Manual de empleo, I Introducción y Propósito.

Gobierno, a la vez que se mejoran y aumentan los servicios que se prestan a nuestra sociedad.[4]

*Manual de Empleo*, (III)(G)(2).

El 27 de febrero de 2014, el Lcdo. José R. Negrón Fernández, Secretario del Departamento de Corrección y Rehabilitación en ese entonces, emitió un memorando sobre *Instrucciones para Procesar Pagos a Confinados por Labores Realizadas en las Instituciones Correccionales*. En síntesis, expresó que a partir del recibo de esa comunicación se asignará una cantidad de dinero a cada institución que se destinará al pago de nómina a los confinados por labores realizadas en cada institución. Indica, además, que:

Es responsabilidad de cada Superintendente hacer un análisis de las necesidades y determinar a los confinados que se les pagará por las labores realizadas. Luego de completado este análisis deberá coordinar con el Supervisor de la Unidad Sociopenal para que se oriente a los confinados que realizan labores de cuáles tareas estarán sujetas a recibir compensación económica y cuáles no. Los restantes solo serán acreedores de bonificación adicional. **Esta gestión debe llevarse a cabo a través del Comité de Clasificación y Tratamiento y consignar esa información en los acuerdos. Deben tomarle la firma al confinado en evidencia de que fue debidamente orientado y aceptado las condiciones ofrecidas para evitar reclamos de pago futuros**.

Igualmente deberán orientar a los supervisores de las diferentes áreas de trabajo, para que a su vez al reclutar confinados para realizar labores le hagan la advertencia de que todos los que se asignen a trabajar luego del recibo de esta comunicación será solamente a cambio de bonificación adicional. Estos deberán mantenerse en comunicación con el Superintendente para conocer a quienes se les podrá pagar. (Énfasis nuestro).[5]

---

[4] El citado inciso (III)(G)(2), anteriormente disponía lo siguiente: "En el caso de trabajos en la comunidad o de industrias o talleres en facilidades dentro de la institución, los sueldos o jornales y los beneficios marginales serán equiparables a los del resto de la industria".

[5] Alegato del Departamento de Corrección y Rehabilitación, Apéndice págs. 31-32.

**B.**

Es norma reiterada que los tribunales están llamados a concederles amplia deferencia a determinaciones de las agencias administrativas. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833 (2021); Graciani Rodríguez v. Garage Isla Verde, LLC, 202 DPR 117, 126 (2019). Las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que deben respetar los tribunales mientras la parte que las impugna no produzca suficiente evidencia para derrotarlas. Calderón Otero v. C.F.S.E., 181 DPR 386 (2011). Ello, en vista de que los organismos administrativos cuentan con la experiencia y conocimiento especializado en los asuntos que les han sido encomendados. Moreno Lorenzo y otros v. Depto. Fam., supra; OCS v. Universal, 187 DPR 164, 178 (2012); The Sembler Co. v. Mun. de Carolina, 185 DPR 800 (2012). Así pues, los tribunales le deben dar gran peso o deferencia a las aplicaciones e interpretaciones de las agencias con respecto a las leyes y los reglamentos que administran, por lo que no pueden descartar libremente sus conclusiones e interpretaciones de derecho. Cruz Negrón v. Adm. de Corrección, 164 DPR 341, 357 (2005).

Asimismo, se ha reiterado que el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. Ley de Procedimiento Administrativo Uniforme, Sección 4.5, 3 LPRA sec. 9675; Rebollo v. Yiyi Motors, 161 DPR 69 (2004); Otero v. Toyota, 163 DPR 716 (2005). Evidencia sustancial se ha definido como "aquella evidencia relevante que una mente

razonable podría aceptar como adecuada para sostener una conclusión". OCS v. Point Guard Ins., 205 DPR 1005 (2020).

Ahora bien, la norma de deferencia no es absoluta ni impide a los tribunales revisar determinaciones administrativas que no estén basadas en evidencia sustancial, cuando el organismo erró en aplicar la ley o cuando la actuación de la agencia haya sido arbitraria, irrazonable o contraria a derecho. Moreno Lorenzo y otros v. Depto. Fam., supra; The Sembler Co. v. Mun. De Carolina, supra, pág. 882; Otero v. Toyota, supra, pág. 729.

### III.

En esencia el señor Montalvo López nos solicita que revisemos la respuesta que recibió de la División de Remedios Administrativos mediante la cual se le denegó su solicitud sobre el pago por trabajos rendidos en el módulo 8 C-1 de la Institución Guerrero de Aguadilla. Señaló que firmaba la nómina, se le solicitó su número de cuenta y los últimos dígitos del seguro social, pero no se le depositó el dinero. Aseveró que la decisión de la agencia de no pagarle es una arbitraria, caprichosa e ilegal, la cual le priva de tener sus cosas y el sustento diario.

Por su parte, el Departamento de Corrección nos informa que se debe confirmar la determinación recurrida. Explicó que en la Institución Correccional Guerrero las labores que se les otorgan pago y bonificación adicional son para las mejoras permanentes, áreas verdes, taller mecánico, lavandería y cocina. Que las demás labores solo reciben bonificación adicional. Sostuvo que según surge de los documentos anejados al escrito, que incluye un memorando intitulado: *Instrucciones para Procesar Pagos a Confinados por Labores Realizadas en las Instituciones Correccionales*, la agencia orientó al recurrente y este firmó la *Certificación de Labores Voluntarias Sin Compensación Monetaria.*

Concluyó que, a la luz del memorando ante mencionado, el recurrente no recibe compensación por las labores realizadas en el área de mantenimiento del módulo 8CI.

Evaluamos.

Surge del expediente que el señor Montalvo López presentó una solicitud ante la División de Remedios Administrativos para que se le explicara por qué no se le estaba pagando por el trabajo de mantenimiento, limpieza, pintura y otros en el módulo 8 C-1.

El área concernida de la División de Remedios Administrativos le explicó que algunos confinados, no reciben bonificación adicional por trabajo y estudios cursados, por su tipo de sentencia. En cuanto al pago por el trabajo, le informó que ningún confinado que trabaja dentro de las áreas de vivienda (módulos), recibirá compensación monetaria de parte del Departamento de Corrección y Rehabilitación. Luego, en la Respuesta a la solicitud de Reconsideración, la División de Remedios, agregó que no tiene compensación monetaria por el

Revisado el expediente, junto a la normativa aplicable, le impartimos deferencia al ente administrativo.

El Manual de Trabajo para Miembros de la Población Correccional[6], dispone que el Departamento de Corrección provee experiencias de trabajo o empleo remunerado, pero la participación a estos es estrictamente voluntaria. El pago por trabajo rendido, de proceder, estaría sujeto a que así lo dictamine una orden administrativa al efecto.[7] A esos efectos, el 27 de febrero de 2014 el entonces Secretario del Departamento de Corrección y Rehabilitación, emitió un memorando en el que explicó que cada Superintendente es responsable de hacer un

---

[6] Manual de Trabajo, Inciso (III) B y G
[7] Véase Manual de Trabajo, Inciso (III) B y G.

análisis de las necesidades y determinar a los confinados que se les pagará por las labores realizadas. Luego de completado este análisis, deberá coordinar con el Supervisor de la Unidad Sociopenal para que se oriente a los confinados que realizan labores de cuáles tareas estarán sujetas a recibir compensación económica y cuáles no. Los restantes solo serán acreedores de bonificación adicional. Esta gestión debe llevarse a cabo a través del Comité de Clasificación y Tratamiento y consignar esa información en los acuerdos. Deben tomarle la firma al confinado en evidencia de que fue debidamente orientado y aceptado las condiciones ofrecidas para evitar reclamos de pago futuros.[8]

De lo anterior surge que el trabajo en las instituciones correccionales es de carácter voluntario y que no todas las labores conllevan compensación económica. Ahora bien, esta información se le debe notificar al miembro de la población correccional, quien debe aceptar las condiciones por escrito.

En este caso, luego de presentado este recurso, el 19 de abril de 2024 el Comité de Clasificación y Tratamiento emitió un Acuerdo del que surge que orientaron al señor Montalvo López a los efectos de que las labores de mantenimiento interior en el Módulo 8 C-I que realiza desde el 1ro de mayo de 2023 son de carácter voluntario y no conlleva remuneración monetaria. Que las labores forman parte de su Plan Institucional y como medio para combatir el ocio. El Comité de Clasificación fundamentó su decisión conforme estipulado en las Instrucciones emitidas el 27 de febrero de 2014 por el entonces Secretario del Departamento de Corrección. Mencionaron en el Acuerdo que las instrucciones son las vigentes y que el área de trabajo del confinado no está

---

[8] Alegato del Departamento de Corrección y Rehabilitación, Apéndice págs. 31-32.

consignada para recibir remuneración y no se encuentra presupuestada a esos fines. El señor Montalvo López firmó el referido Acuerdo del Comité.

Además, el recurrente firmó otro documento sobre *Certificación de Labores Voluntarias sin Compensación Monetaria.* Allí el señor Montalvo Ramos certificó que fue orientado el día 19 de abril de 2024, que fue asignado a realizar labores en el interior del módulo 8C-I con carácter voluntario, las cuales serán ejecutadas como parte del plan institucional y no para recibir compensación económica.

De manera que, el recurrente asintió y aceptó que las labores que realiza en el módulo 8 C-I son de forma voluntaria, sin que medie compensación económica alguna. Lo anterior afirma que la decisión aquí recurrida, mediante la cual se le informó que sus labores no son compensables económicamente, resulta adecuada y razonable. De otro lado, el recurrente no rebatió la presunción de regularidad y corrección que le asiste al Departamento de Corrección en sus decisiones. Tampoco vemos indicio de arbitrariedad, ilegalidad o irregularidad en la decisión que revisamos.

**IV.**

Por las razones antes expresadas, se confirma la Respuesta que emitió la División de Remedios Administrativos del Departamento de Corrección.

Instruimos, a la Secretaria del Departamento de Corrección y Rehabilitación a entregar copia de esta resolución al recurrente, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones